**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 22-cv-00127-CMA-KLM

DISH PURCHASING CORPORATION,

      Plaintiff,

v.

SUNCRAFT TECHNOLOGIES, INC.,

      Defendant.

---

### ORDER GRANTING MOTION TO DISMISS RULE 20(a)(2) CLAIMS

---

This matter is before the Court on joined Defendant DISH Network, LLC's Motion to Dismiss Rule 20(a)(2) Claims ("Motion to Dismiss"). (Doc. # 62.) For the following reasons, the Court grants the Motion to Dismiss.

## I.    <u>BACKGROUND</u>

The following well-pleaded facts are taken from Defendant/Counter Claimant Suncraft Technologies, Inc.'s ("Suncraft") Counter Complaint and Rule 20(a)(2) Claims (Doc. # 41) and are assumed to be true for purposes of reviewing the Motion to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Suncraft is a company that was in the business of commercial printing before it ceased business operations in August 2021. (Doc. # 41 at 14.) The dispute in this case arises from two contracts that Suncraft entered into with Plaintiff/Counter Defendant

DISH Purchasing Corporation ("DISH Purchasing") in early 2021. (*Id.* at 16.) According to Suncraft, DISH Purchasing has no employees or customers and acts as a purchasing agent for affiliates of DISH Network Corporation, the parent company of various entities operating under the "DISH" umbrella. (*Id.* at 15.) Suncraft alleges that DISH Network, LLC ("DISH Network"), the Rule 20(a)(2) Defendant and Movant, is an affiliate of DISH Network Corporation. (*Id.*)

In early 2021, LogicSource, a procurement company, contacted Suncraft about an opportunity for Suncraft to provide direct mailers on behalf of DISH Network. (*Id.*) Suncraft alleges that LogicSource acted as an agent of DISH Purchasing during these communications. (*Id.* at 16.) LogicSource and Suncraft reached an agreement, subject to the approval of DISH Purchasing, on the pricing of certain direct mailers that Suncraft would print and mail for the purpose of advertising the services and products of DISH Network. (*Id.*) On March 10, 2021, DISH Purchasing sent Purchase Order # 596414 ("First Purchase Order") to Suncraft ordering production and mailing of certain mailers for a direct mail campaign ("Cycles 5 and 6"). (*Id.*) On April 23, 2021, DISH Purchasing sent Purchase Order # 6006605 ("Second Purchase Order") to Suncraft ordering production and mailing of certain direct mailers for another direct mail campaign ("Cycles 7 and 8"). (*Id.* at 17.)

Both Purchase Orders incorporated by reference DISH Purchasing's Purchase Order Terms and Conditions ("Terms and Conditions") effective October 1, 2020. (Doc. # 41-1 at 2, 8.) The Terms and Conditions include the following preamble:

> The supplier named in the Purchase Order ("**Supplier**") and DISH
> Purchasing Corporation ("**DISH**") agree to be bound by all terms and

Case 1:22-cv-00127-CMA-KLM   Document 84   Filed 02/07/23   USDC Colorado   Page 3 of 18

conditions contained in these Purchase Order Terms and Conditions (these "**Terms and Conditions**"), all of which are a part of each purchase order issued to Supplier by DISH (the "**Purchase Order**," and together with these Terms and Conditions, this "**Agreement**"). DISH and Supplier may be referred to in this Agreement individually as a "**Party**" and, together, as the "**Parties**." "**Affiliate**" means, with respect to a Party, any person or entity directly or indirectly controlling, controlled by, or under common control with such Party; provided, however, that for the purposes of this definition, none of EchoStar Corporation nor any of its direct or indirect wholly owned subsidiaries shall be deemed to be under common control with DISH.

(Doc. # 49-1 at 3.)[1] Paragraph 21 of the Terms and Conditions, titled "Purchase for Resale," states as follows:

Supplier acknowledges and agrees that: (a) the Products purchased by DISH are for resale to one or more of DISH's Affiliate(s); . . . and (c) all terms and conditions of the Purchase Order will be fully enforceable by the Affiliate(s) to which DISH reallocates the Products as if such entity were a party to these Agreement. Promptly following Supplier's written request, DISH shall provide Supplier resale certificates with respect to the resale of the Products.

(*Id.* at 8.) Suncraft alleges that DISH Purchasing was acting as the purchasing agent for affiliate DISH Network, whose services and products were the subject of the direct mailers for Cycles 5 and 6 and Cycles 7 and 8. (Doc. # 41 at 16–17.)

In April and May 2021, Suncraft printed and mailed approximately 1.2 million direct mailers pursuant to the First Purchase Order for Cycles 5 and 6. (*Id.* at 16.) On

---

[1] The Terms and Conditions are attached as Exhibit A to DISH Purchasing's Amended Complaint. (Doc. # 49-1.) Because Suncraft's Counter Complaint and Rule 20(a)(2) claims refer to the Terms and Conditions by quoting them and citing to the Exhibit to DISH Purchasing's Complaint, and because there is no dispute as to authenticity, the Court finds it appropriate to consider the Terms and Conditions as a document referred to in and central to Suncraft's claims. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (observing that in ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002))).

June 14, 2021, and July 7, 2021, Suncraft issued invoices to DISH Purchasing for the mailers for Cycles 5 and 6. (*Id.*; Doc. # 41-1 at 4, 6.) Subsequently, Suncraft produced and mailed approximately 11 million direct mailers for Cycle 7. (Doc. # 41 at 17.)

Suncraft alleges that after it produced and mailed direct mailers for Cycle 7, DISH Purchasing terminated the Second Purchase Order for Cycles 7 and 8. (*Id.*) On August 5, 2021, Suncraft issued DISH Purchasing an invoice for the direct mailers printed and mailed by Suncraft for Cycle 7. (*Id.*) Suncraft asserts that DISH Purchasing did not pay, and has never paid, the June 4, 2021 and July 7, 2021 invoices for Cycles 5 and 6 or the August 5, 2021 invoice for Cycle 7. (*Id.* at 16–17.) Suncraft further alleges that DISH Network has accepted the benefits of the direct mailers produced and mailed by Suncraft pursuant to Cycles 5, 6, and 7, but Suncraft has not been paid any amounts due for the direct mailers. (*Id.* at 17.) Suncraft contends that it is owed $1,350,926.81 for the mailers it produced pursuant to the Purchase Orders. (*Id.*)

Plaintiff/Counter Defendant DISH Purchasing initiated this lawsuit against Suncraft on January 18, 2022. (Doc. # 1.) In its Amended Complaint, DISH Purchasing asserts a single claim against Suncraft for breach of contract. (Doc. # 49 at 6–7.) On September 2, 2022, Suncraft filed its Answer, Affirmative Defenses, Counterclaim against DISH Purchasing, and Claims in Joinder against DISH Network pursuant to Fed. R. Civ. P. 20(a)(2). (Doc. # 41.) Suncraft asserts two claims against DISH Network: (1) breach of contract and (2) unjust enrichment. (*Id.*)

DISH Network filed the instant Motion to Dismiss Suncraft's Rule 20(a)(2) claims on October 17, 2022. (Doc. # 62.) Suncraft filed its Response (Doc. # 69), and DISH Network followed with its Reply (Doc. # 78). The matter is now ripe for review.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor

does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III.   <u>DISCUSSION</u>

DISH Network moves to dismiss Suncraft's breach of contract claim on the basis that Suncraft has failed to allege that DISH Network was a party to any contract with Suncraft. DISH Network further moves to dismiss Suncraft's unjust enrichment claim on the grounds that the claim is precluded by the existence of an express contract between Suncraft and DISH Purchasing. The Court will address each of Suncraft's Rule 20(a)(2) claims in turn.

### A.   BREACH OF CONTRACT

In Colorado, a party attempting to recover on a claim for breach of contract must adequately allege facts sufficient to show: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). DISH Network contends that Suncraft has not plausibly alleged the first element, the existence of a contract, because it is undisputed that DISH Network was not a party to either Purchase Agreement. (Doc. # 62 at 4–5.) Moreover, DISH Network argues that Suncraft has not adequately alleged facts sufficient to demonstrate that DISH Network may be held liable as DISH Purchasing's principal or as a third-party beneficiary to the Purchase Orders.

1.   <u>Agent-Principal Relationship</u>

"An agency relationship 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 362 (Colo. App. 2007) (quoting *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 407 (Colo. App. 2004)). Under Colorado law, a principal may be bound by an agent's actions if the agent acts pursuant to either actual or apparent authority. *Citywide Banks v. Armijo*, 313 P.3d 647, 652 (Colo. App. 2011). Actual authority can be express or implied:

> Express authority exists if the principal directly states that an agent has authority to perform a particular act on the principal's behalf. Implied authority involves authority to do acts that are incidental to, or are necessary, usual, and proper to accomplish or perform, the primary authority expressly delegated to the agent.

*Villalpando*, 181 P.3d at 362–63. Apparent authority, on the other hand, "is established by proof of 'written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him.'" *Id.* (quoting *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990)). Thus, in order for DISH Network to be liable for breach of contract under an agency theory, Suncraft's Counter Complaint and Rule 20(a)(2) claims must state facts that plausibly allege that DISH Purchasing had actual or apparent authority to act on DISH Network's behalf. *See Metro. Prop. & Cas. Ins. Co. v. Meza*, No. 18-cv-00505-MEH, 2018 WL 11435257, at *4 (D. Colo. Oct. 12, 2018) (applying Colorado agency law in considering a Rule 12(b)(6) motion to dismiss).

Upon carefully reviewing Suncraft's Rule 20(a)(2) claims, the Court agrees with DISH Network that the factual allegations are insufficient to demonstrate a principal-agent relationship between DISH Network and DISH Purchasing. Although Suncraft states that DISH Network was DISH Purchasing's "principal" and that DISH Purchasing "acted for and on behalf" of DISH Network in entering into the Purchase Orders (Doc. # 41 at 17), Suncraft does not provide any non-conclusory factual allegations showing that DISH Purchasing acted pursuant to any actual or apparent authority. *See Southern Disposal*, 161 F.3d at 1262 (observing that the court need not accept conclusory allegations without supporting factual averments). For example, there are no allegations that DISH Network "directly stated" that DISH Purchasing had authority to do anything on its behalf. *Villalpando*, 181 F.3d at 362–63. Suncraft also does not allege any "written or spoken words or other conduct" of DISH Network which would cause Suncraft to believe that DISH Network consented to DISH Purchasing purporting to act for it. *Id.* at 363. Further, the Terms and Conditions include no provision indicating that DISH Network is the principal of DISH Purchasing—indeed, the Purchase Orders and Terms of Conditions do not refer to or mention DISH Network at all. *See* (Doc. # 49-1.) In the absence of any factual allegations showing that DISH Purchasing acted on behalf of DISH Network pursuant to actual or apparent authority, Suncraft has failed to plausibly allege a principal-agent relationship such that DISH Network could be held liable for breach of contract. *See Metro. Prop. & Cas. Ins.*, 2018 WL 11435257, at *5.

In its Response, Suncraft argues that the Court may fairly infer the existence of an agency relationship based on the alleged facts that DISH Purchasing "has no

employees," that DISH Purchasing "functions as the purchasing agent for various affiliates of Dish Network Corporation," and that DISH Network is an affiliate of Dish Network Corporation. (Doc. # 69 at 6.) The Court disagrees with Suncraft and finds that to infer an agency relationship between DISH Network and DISH Purchasing from these allegations alone is simply too great a stretch. *See Ashcroft*, 556 U.S. at 678 (stating that for a claim to survive a motion to dismiss, "the court [must be able] to draw the **reasonable** inference that the defendant is liable for the misconduct alleged" (emphasis added)). Without any factual allegations demonstrating words or conduct by DISH Network manifesting consent to DISH Purchasing acting as its agent, the Court cannot draw a reasonable inference of a principal-agent relationship between the two entities. *See Metro. Prop. & Cas. Ins.*, 2018 WL 11435257, at *5 (finding that a plaintiff failed to state a claim where the complaint did not state facts that plausibly alleged actual or apparent authority); *Rooftop Restoration, Inc. v. Ohio Sec. Ins. Co.*, No. 15-cv-00620-LTB-KLM, 2017 WL 11543176, at *4 (D. Colo. July 12, 2017) (finding no agency relationship where there was "no evidence of any affirmative words or conduct from the principal . . . that would give Plaintiff a reasonable basis to believe that an agency relationship existed").

Suncraft also argues that it "can and will so plead if it becomes necessary" that "Dish Network itself, by means of its own employees, conducted the contract negotiations with Suncraft and, in the course of such negotiations, directed and controlled Dish Purchasing." (*Id.*) Critically, however, Suncraft did not include any of these factual allegations in its Counter Complaint and Rule 20(a)(2) claims, and the

Court may not consider new facts presented in Suncraft's briefing in ruling on the sufficiency of its pleadings. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206–07 (D. Colo. 2015) (stating that a plaintiff "cannot amend [its] complaint by adding factual allegations in response to Defendant's motion to dismiss") (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint)). The Court therefore declines to consider these new facts. Should Suncraft seek to pursue its breach of contract claim against DISH Network pursuant to an agency theory, Suncraft may file a motion for leave to amend its pleadings to include these factual allegations.

2.    Third-Party Beneficiary

Third-party beneficiaries are an exception to the general rule that "only parties to a contract may seek to enforce its terms." *Bewley v. Semler*, 432 P.3d 582, 586 (Colo. 2018). "In Colorado, a person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Id.* (quoting *E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985)). The third-party beneficiary need not be specifically mentioned in the contract in order to bring an action for breach of contract. *See Villa Sierra Condo. Ass'n v. Field Corp.*, 878 P.2d 161, 166 (Colo. App. 1994).

Suncraft alleges that DISH Network is liable for breach of contract as a third-party beneficiary to the Purchase Orders. (Doc. # 41 at 20.) DISH Network disputes that

it is a third-party beneficiary or that Suncraft has alleged facts sufficient to demonstrate as such. (Doc. # 62 at 6–7.) However, upon reviewing Colorado law and decisions from other jurisdictions, the Court finds that there is a more significant legal error with Suncraft's claim. Even if it were undisputed that DISH Network was a third-party beneficiary to the Purchase Orders, Suncraft has provided no authority for its position that a third-party beneficiary may be sued for breach of contract.

Although both parties cite to several Colorado cases expounding the third-party beneficiary doctrine, all of those cases address situations in which a third-party beneficiary brought suit against a party to the contract for breach of contract. Suncraft does not point to any applicable authority—and the Court has found none—in which a party to a contract successfully brought suit *against a third-party beneficiary* for breach of contract. *See IIT, Inc. v. Commc'ns. Distribs., LLC*, No. 20-cv-01580-RM-STV, 2021 WL 5240243 (D. Colo. Jan 27, 2021) (rejecting a plaintiff's assertion that a third-party beneficiary may be sued for breach of contract and stating that "[t]he Court is not aware of caselaw supporting Plaintiffs' assertion that a party may be held liable for breach of a contract to which it was not a party"). Rather, several courts in other districts have rejected the proposition that third-party beneficiaries may be sued for breach of a contract to which they are not parties. *See Nat'l Rural Telecomms. Co-op v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003) (observing that "a third party beneficiary does not have a duty to perform under the contract and, thus, cannot be sued for breach"); *Anago Franchising, Inc. v. Shaz, LLC*, No. 10-62273-CIV-ROSENBAUM, 2012 WL 12860742, at *3 (S.D. Fla. Nov. 27, 2012) (reviewing cases

and determining that "even if Defendants are third-party beneficiaries, they cannot breach a contract to which they are not parties"); *Focus Direct, Inc. v. Sekulow*, No. SA-02-CA-1175-RF, 2003 WL 22143281, at *1 (W.D. Tex. Sept. 5, 2003) ("Defendants have not cited, and the Court has not found, any authority for the proposition that a third-party beneficiary may *be sued* for breach of a contract to which the beneficiary was not a party."); *Implement Serv., Inc. v. Tecumseh Prods. Co.*, 726 F. Supp. 1171, 1182 (S.D. Ind. 1989) (holding that although a third-party beneficiary could "sue in some circumstances for enforcement of the contract," a third-party beneficiary "could not be sued on the contract" because third-party beneficiaries "have no contractual obligations, only benefits"). This Court agrees with these courts that a breach of contract claim cannot proceed against a third-party beneficiary because a third-party beneficiary did not agree to undertake the contract's obligations and is not a party to the contract.

Notwithstanding the lack of authority for its cause of action, Suncraft argues that a "third-party beneficiary must accept a contract's burdens along with its benefits" and cites to *Otimo Music, Inc. v. Royalty Exchange, Inc.*, No. 18-cv-00006-RBJ, 2018 WL 6697073, at *4 (D. Colo. Dec. 20, 2018). (Doc. # 69 at 7.) The Court finds *Otimo Music* to be inapposite. In *Otimo Music*, United States District Judge R. Brooke Jackson considered whether a third-party beneficiary to a contract could enforce a forum selection clause. 2018 WL 6697073, at *3–4. In so analyzing, Judge Jackson observed that forum selection clauses may also be enforceable against third-party beneficiaries and noted that other courts have "applied the principle of mutuality to reason that where a clause can be invoked by a party, it can also be invoked against that party, and vice

versa." *Id.* at *4. The Court does not disagree with the logic that "a range of transaction participants, parties, and nonparties, should benefit from and be subject to forum selection clauses." *Id.* (quoting *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-0234-WYD-MEH, 2018 WL 2185882, at *8 (D. Colo. May 23, 2008)). However, the Court finds the "principle of mutuality" applicable to forum selection clauses to be entirely inapplicable to the instant circumstances. The Court cannot find any authority supporting Suncraft's position that a third-party beneficiary, who did not agree to a contract, may be subject to the contract's burdens in addition to its benefits for purposes of a breach of contract action.

In light of the foregoing principles, the Court finds that Suncraft has failed to sufficiently allege that DISH Network was a party to the Purchase Orders or that a contract existed between Suncraft and DISH Network. Suncraft's Rule 20(a)(2) claim for breach of contract must therefore be dismissed.

## B.   UNJUST ENRICHMENT

Next, the Court will address DISH Network's argument that Suncraft is barred from asserting an unjust enrichment claim, even in the alternative, because the claim is precluded by an express contract.

"Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). An unjust enrichment claim "does not depend in any way upon a promise or privity between the parties." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). To state

13

a claim for unjust enrichment, a plaintiff must allege that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp.*, 382 P.3d at 833 (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)). Further, under Colorado law, a plaintiff "generally cannot recover for unjust enrichment . . . where there is an express contract addressing the subject of the alleged obligation to pay." *Id.* There are two exceptions to this rule: "[A] party may still recover for unjust enrichment when (1) the express contract fails or is rescinded, or (2) the claim covers matters that are outside of or arose after the contract." *Id.* (citations omitted).

The Colorado Supreme Court has also stated that a party to a contract may, under certain circumstances, be entitled to pursue an unjust enrichment claim against a party who benefitted from the contract but was not a party to the contract. *See DCB Const. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 120–23 (Colo. 1998). However, the court cautioned that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of performance by the third person." *Id.* at 121 (quoting Restatement of Restitution § 110 (1937)). The court held that a plaintiff may pursue an unjust enrichment claim against a non-party to a contract only where there is "some type of improper, deceitful, or misleading conduct by the [non-party]." *Id.* (citing, *e.g.*, *Kemp v. Majestic Amusement Co.*, 234 A.2d 846, 848 (Pa. 1967) ("[I]n the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party.")).

DISH Network argues that Suncraft's unjust enrichment claim must be dismissed because the claim does not allege any violation that is independent from the express contracts in this case. (Doc. # 62 at 8–9.) In other words, DISH Network asserts that Suncraft's unjust enrichment claim is simply an impermissible "repackaging" of its breach of contract damages claims against DISH Purchasing and DISH Network. In response, Suncraft contends that it may properly plead an unjust enrichment claim at this stage of the litigation pursuant to Federal Rule of Civil Procedure 8(d).

The Court agrees with DISH Network that Suncraft has not adequately alleged an unjust enrichment claim in the alternative because (1) Suncraft does not dispute the existence or enforceability of the Purchase Orders and (2) its claim arises from the terms of the Purchase Orders. Although Suncraft is correct that the Federal Rules of Civil Procedure permit pleading in the alternative, *see* Fed. R. Civ. P. 8(d), the Tenth Circuit has stated that an unjust enrichment claim may not proceed even in the alternative when it is undisputed that there is an enforceable contract under which the party may recover, *see Cross Country Land Servs., Inc. v. PB Telecomms., Inc.*, 276 F. App'x 825, 834–35 (10th Cir. 2008) (unpublished) (holding that an unjust enrichment claim was subject to dismissal because it was undisputed that an express contract covered the relevant obligations). This case is thus distinguishable from the cases cited by Suncraft in which courts in this district permitted an unjust enrichment claim to proceed in the alternative at the motion to dismiss stage. Critically, in those cases, the parties still disputed the validity and enforceability of the contract at issue. *See, e.g.*, *United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1059 (D. Colo.

2020) (determining that an alternative unjust enrichment claim could proceed under Rule 8(d) "until it is clear that the . . . contract is valid and enforceable"). In the instant case, it is unquestioned that the Purchase Orders are valid and enforceable.

The Court also finds that Suncraft has failed to adequately allege a third-party unjust enrichment claim. Suncraft alleges that DISH Network "received and accepted the benefits of the direct mailer[s] produced and mailed by Suncraft for Cycles 5, 6, and 7 but has not paid Suncraft for the value of benefits." (Doc. # 41 at 20.) However, a "person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of performance by the third person." *DCB Constr.*, 965 P.2d at 121 (quoting Restatement of Restitution § 110 (1937)); *see also Cross Country Land Servs.*, 276 F. App'x at 835 (holding that a party to a contract could not recover against a third party beneficiary "merely because [the other party] failed to perform by making payments of invoices as required by the [contract]"). In order to state a claim for unjust enrichment, Suncraft must allege that DISH Network, as a non-party to the contract who received a benefit, "engaged in some form of improper, deceitful, or misleading conduct." *DCB Constr.*, 965 P.2d at 123. In the absence of any allegations that DISH Network engaged in any improper, deceitful, or misleading conduct, Suncraft has failed to plausibly allege that DISH Network was unjustly enriched in the amount of the value of the direct mailers. *Cf. Phelps Oil & Gas, LLC v. Noble Energy, Inc.*, No. 14-cv-02604-REB-CBS, 2016 WL 9735739, at *4 (D. Colo. Aug 1, 2016) (finding that a plaintiff stated a claim for unjust enrichment because it "alleged improper and deceitful conduct on the part of" the

defendant which allowed the defendant to benefit at the expense of the plaintiff), *report and recommendation adopted*, 2016 WL 9735749 (D. Colo. Sept. 28, 2016).

For these reasons, the Court finds that Suncraft's Rule 20(a)(2) claims against DISH Network must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, because Suncraft could conceivably amend its Rule 20(a)(2) claims to state a viable breach of contract claim under an agency theory and/or a viable unjust enrichment claim, the dismissal will be without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (observing that dismissal with prejudice is appropriate "where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile").

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that DISH Network, LLC's Motion to Dismiss Suncraft Technologies, Inc.'s Rule 20(a)(2) Claims (Doc. # 62) is GRANTED.

Accordingly, Suncraft's Rule 20(a)(2) claims are DISMISSED WITHOUT PREJUDICE.

It is FURTHER ORDERED that Suncraft shall have twenty-one (21) days from the date of this Order to file a motion for leave to amend its Rule 20(a)(2) claims, together with a proposed amendment curing the deficiencies identified in this Order. If

Suncraft fails to file a motion for leave to amend by that date, its Rule 20(a)(2) claims against DISH Network will be dismissed with prejudice.[2]

DATED:  February 7, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[2] For future filings, the parties shall comply with this Court's practice standards with respect to the format of documents presented for filing and case captions. *See* Civ. Practice Standard 10.1(a) (requiring Arial 12-point font); D.C.COLO.LCivR 1.2. Future filings that do not conform to these standards may result in an order striking the noncompliant filing without substantive consideration. *See* Civ. Practice Standard 1.1(c).