**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 22-cv-00127-CMA

DISH PURCHASING CORPORATION,

     Plaintiff,

v.

SUNCRAFT TECHNOLOGIES, INC.,

     Defendant.

---

**ORDER DENYING PARTIES'
MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff DISH Purchasing Corp. and Defendant Suncraft Technologies, Inc.'s separate Motions for Summary Judgment. (Docs. ## 113, 114.)[1] For the following reasons, both Motions are DENIED.

## I.    BACKGROUND

### A.    FACTS

#### 1.    Two Valid Contracts Form

This contract dispute involves two corporate entities. Suncraft, a commercial printing company, was incorporated in and operating out of Illinois until it went out of business in August 2021. (Doc. # 106 at 3.) DISH Purchasing is an affiliate of the cable

---

[1] Although the pending motions are technically (Docs. ## 113 & 114), the Court notes that those filings are redacted. *But cf.* (Docs. ## 105 & 106.)

provider known as DISH Network Corp. (Doc. # 56 at 3–4.) DISH Purchasing solicits offers from vendors capable of printing and mailing advertisements for DISH Network's cable service packages and enters contracts with those vendors. *See id.*

The parties have a history of conducting business together. *E.g.*, (Doc. # 105 at 3.) The facts relevant to this case begin in March 2021. At that time, the parties entered into a one-page contract known as the "ITA 5/6 Contract." (Doc. # 106-5.) Under the ITA 5/6 Contract, DISH Purchasing agreed to pay Suncraft for printing and delivering DISH Network's advertising mailers during a sales promotion known as the "ITA 5/6 Campaign." *See generally* (Doc. # 106 at 3; Doc. # 113-4 at 4–5).[2] According to the ITA 5/6 Contract, Suncraft promised to print 3,537,459.6 mailers and distribute them during Cycles 5 and 6 of the ITA 5/6 Campaign, *i.e.*, May and June of 2021. (Doc. # 106 at 3; Doc. # 105-5 at 144.)[3] Suncraft fulfilled its obligation to print and mail all the advertisements as promised in the ITA 5/6 Contract. *Compare* (Doc. # 105 at 4), *with* (Doc. # 106 at 10 (referring to the work that Suncraft "purportedly did" without directly disputing performance under the ITA 5/6 Contract).)

---

[2] DISH runs promotional mailing campaigns that are divided into eight-week "Cycles" that begin on the first Monday of each week. DISH utilizes such a breakdown to encourage a steady rate of new customers in a way that avoids overloading DISH's call centers and hardware installers. (Doc. # 113-4 at 4–5.)

[3] The ITA 5/6 Contract does not provide a "Delivery Promise Date," but the record strongly suggests that the parties understood that meeting the Cycles 5 and 6 deadlines required mailing advertisements that would be delivered on every Monday for the sixteen consecutive weeks that comprise both Cycles. (Doc. # 106-6); *but see* (Doc. # 49 at § 15); (Doc. # 113-4 at 4–5) (explaining the Cycles). Further, both contracts explicitly make time "of the essence" such that the untimely delivery of "all of the [mailers]" constitutes a material breach of either contract. (Doc. # 106-7 at 3.)

In April 2021, before DISH Purchasing paid Suncraft for the ITA 5/6 Contract, the parties executed a second contract. In this separate contract, Suncraft agreed to print and mail more[4] advertisements for DISH Network's next promotion, the "PQ 7/8 Campaign," which was planned for July and August of 2021. *See* (Doc. # 106-6) ("PQ 7/8 Contract"); (Doc. # 106 at 3–4); *see generally* (Doc. # 106 at 3). Both contracts share the same set of Terms and Conditions, incorporated by reference. (Doc. # 106-5; Doc. # 106-6).

2.  The Contracts' Terms and Conditions

The parties' dispute necessitates brief mention of two sections of the Terms and Conditions. First, the Terms and Conditions vest DISH Purchasing with the right to "setoff," *i.e.*, the right to deduct any of Suncraft's outstanding debts from any forthcoming payments owed by DISH Purchasing. (Doc. # 106-7 at 2.) Second, the Terms and Conditions contain a *force majeure* clause that addresses the parties' negotiated degrees of risk in case of a *force majeure* event. *Id.* at 11–12.

The *force majeure* clause makes certain options available to the parties in the event that a qualifying *force majeure* event occurs. If a *force majeure* event befalls either party, the affected party must give the unaffected party immediate notice which must include an explanation of the *force majeure* event and "any action being taken to avoid or minimize its effect." (Doc. # 106-7 at 11–12.) At that point, the Terms and Conditions offer the unaffected party two options: either (a) suspend the breaching

---

[4] As detailed below, the record contains contradictions regarding the exact number of mailers ordered by the PQ 7/8 Contract such that the Court cannot accurately state how many advertisements Suncraft agreed to print and mail in the PQ 7/8 Contract.

party's obligations until the *force majeure* event passes or, (b) if the *force majeure* event causes at least fifteen days of delay or nonperformance, terminate the contract without any further liability beyond what is owed for work "already provided and accepted." *Id.* at 12.

Upon receipt of the *force majeure* notice, the unaffected party has forty-five days to elect a remedy in writing; otherwise, the Terms and Conditions default to the bilateral suspension of obligations. *Id.* If that scenario is triggered, the Terms and Conditions entitle the unaffected party to offset whatever money it owes the affected party based on the cost of "buy[ing], sell[ing,] or furnish[ing]" the mailers from elsewhere.

3. <u>The Contract Dispute Emerges</u>

As Suncraft began working on the PQ 7/8 Contract, the COVID-19 pandemic impacted supply costs, shipping rates, and the availability of labor. *E.g.*, (Doc. # 105-1 at 18.) The parties agree that Suncraft failed to fulfill its obligations under the PQ 7/8 Contract. *E.g.*, (Doc. # 105 at 7; Doc. # 106 at 6) The parties disagree, however, over two key details related to Suncraft's attempted contractual performance. First, the parties disagree over how many of Suncraft's printed advertisements, if any, had significant typographical errors that rendered the ads inert. *Compare* (Doc. # 115 at 11), *with* (Doc. # 106 at 6). Second, the parties dispute significantly the pandemic stifled Suncraft's capacity to deliver the printed mailers on time. *Compare* (Doc. # 105 at 6–7), *with* (Doc. # 106 at 6–7).

As Suncraft began struggling to fulfill the PQ 7/8 Contract, the parties' business relationship soured. Between June 14, 2021, and July 7, 2021, Suncraft sent DISH

Purchasing two invoices for Suncraft's fulfillment of the ITA 5/6 Contract. (Doc. # 105-1 at 148.) Suncraft sent a third invoice on August 5, 2021. (Doc. # 41 at 14.) DISH Purchasing withheld payment, citing deficiencies in Suncraft's fulfillment of the PQ 7/8 Contract and its right to offset under both contracts. (Doc. # 105-1 at 148.) Eventually, DISH Purchasing found other vendors—two companies, "RR Donnelley" and "Jenco"—to complete the remainder of the PQ 7/8 Contract. (Doc. # 105 at 9.) The parties disagree as to whether those vendors charged DISH Purchasing more or less than what Suncraft was promised in the PQ 7/8 Contract. *Compare* (Doc. # 120 at 8–10), *with* (Doc. # 105 at 19–20).

## B.   PROCEDURAL HISTORY

DISH Purchasing began this lawsuit on January 18, 2022. DISH Purchasing brings a claim for breach of contract; Suncraft brings counterclaims for breach of contract and unjust enrichment. (Docs. ## 1, 41, 49, 56, 61.) In response to DISH Purchasing's claims, Suncraft raised two affirmative defenses—*force majeure* and setoff—which form the basis of its Motion for Summary Judgment (Doc. # 41); (Doc. # 61); (Doc. # 56 at 9). The parties filed their respective motions for summary judgment on August 24, 2023, and the motions are now ripe. (Docs. ## 105–08, 113–23, 125–26.) The parties' positions are as follows.

Beginning with DISH Purchasing's Motion, DISH Purchasing argues that it is entitled to summary judgment on its breach-of-contract claim because it performed under both contracts (by providing Suncraft the information necessary to print and mail), and Suncraft acknowledges that it failed to perform under the PQ 7/8 Contract. (Doc. #

106 at 9–13.) DISH Purchasing further argues that the Terms and Conditions' setoff clause entitled DISH Purchasing to withhold Suncraft's payment for the ITA 5/6 Contract based on its breach of the PQ 7/8 Contract. (Doc. # 106 at 9–11.) In response, Suncraft contends that it substantially performed until DISH Purchasing anticipatorily repudiated the PQ 7/8 Contract. (Doc. # 115 at 9–10.) In the alternative, Suncraft asserts that any failure to perform was excused by the pandemic's impact on the national supply chain— a *force majeure* event, according to Suncraft. *Id.* at 18–20. The parties also disagree over what damages, if any, DISH Purchasing suffered as a result of Suncraft's failed performance and the extent to which those damages can be proven. *Compare* (Doc. # 115 at 10–13, 16–17), *with* (Doc. # 122 at 9–11).

Suncraft's Motion, on the other hand, argues that it is entitled to summary judgment on its breach-of-contract claim because the parties agree that Suncraft fulfilled the ITA 5/6 Contract, yet DISH Purchasing did not pay Suncraft's invoices for that work. (Doc. # 105 at 9–10.) Further, Suncraft urges this Court to enter summary judgment in Suncraft's favor on DISH Purchasing's breach-of-contract claim because DISH Purchasing has not proven any damages—because the damages it claims belong to a separate corporate entity, DISH Network, LLC. *Id.* at 15–21. In response, DISH Purchasing reiterates its belief that summary judgment should be entered against Suncraft on DISH Purchasing's breach-of-contract claim because Suncraft breached the PQ 7/8 Contract without proving *force majeure* applies. (Doc. # 120 at 5–7.) Further, DISH Purchasing insists that not only has it proven that it suffered damages, but the facts supporting that assertion are undisputed. *Id.* at 7–15. Finally, DISH Purchasing

6

argues that Suncraft cannot prove its breach-of-contract claim because it has not established that DISH Purchasing breached either contract by failing to pay Suncraft's invoices because Suncraft's breach excused DISH Purchasing's nonpayment. *Id.* at 15–17.

## II. <u>APPLICABLE LAW</u>

### A. RULE 56

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id.* However, conclusory statements based on mere conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Under Rule 56, the moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather,

the movant must point the court to a lack of evidence for the other party on any essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## B.  UNIFORM CIVIL PRACTICE STANDARD 7.1D

Civil Practice Standard 7.1D governs the exclusive acceptable format for summary judgment motions and any concomitant response or reply briefs. Uniform Civil Practice Standard 7.1D **mandates** that any response brief filed by a party opposing a motion for summary judgment must "admit or deny the movant's asserted material facts" in "correspondingly numbered paragraphs . . . accompanied by a brief factual explanation for the reason(s) for the denial and a specific reference to material in the record supporting the denial." Unif. Civ. Prac. Standard 7.1D(b)(4). When that response

attempts to argue additional disputed issues of material fact beyond those addressed in the motion for summary judgment, the response must present those arguments in a section titled "Statement of Additional Disputed Facts." *Id.* at 7.1D(b)(5). That section must "set forth simple, declarative sentences, ***separately numbered and paragraphed***, each additional, material disputed fact that undercuts the movant's claim . . . with a ***specific reference*** to material in the record establishing that fact or demonstrating that it is disputed" when the party attempts to argue that outstanding disputed issues of material fact preclude the entry of summary judgment. *Id.* (emphasis added).

Put differently, these standards set the following requirements: in a response to a motion for summary judgment, the non-movant's response must present paragraphs, numbered sequentially, that respond precisely to the movant's "Statement of Undisputed Material Facts." Those responses must admit the fact or deny it with an explanation. That explanation must cite the exact page(s) of the exhibit(s) that support the denial. And if the non-movant is attempting to defeat summary judgment by noting that there are other material factual disputes beyond what the movant references, the non-movant must make that argument in a section titled "Statement of Additional Disputed Material Facts" that mirrors the format of the quintessential "Statement of Undisputed Material Facts" section.

These rules exist for a reason—under Rule 56, the burden of establishing no dispute of material fact belongs to the party seeking summary judgment and, conversely, the non-movant bears the burden of showing the existence of a disputed

material fact. The "sole purpose" of these rules "is to establish facts and determine which of them are in dispute" *Id.* at 7.1D(b)(7). Thus, the failure to follow Civil Practice Standard 7.1D "may result in an order striking or denying the motion or brief, and it will have to be re-submitted. Repeated failures may result in an order granting other proper relief." *Id.* at 7.1D(d).

### III. <u>ANALYSIS</u>

As a preliminary matter, the Court notes that DISH Purchasing's Response (Doc. # 120) to Suncraft's Motion for Summary Judgment flagrantly violates Uniform Civil Practice Standard 7.1D. Under those practice standards, a party responding to a motion for summary judgment must "admit or deny the movant's asserted material facts" in "correspondingly numbered paragraphs . . . accompanied by a brief factual explanation for the reason(s) for the denial and a specific reference to material in the record supporting the denial." Civ. Prac. Standard 7.1D(b)(4). Yet DISH Purchasing's Response is pure narrative argument. (Doc. # 120 at 2–4.) That argument contains no citations to the record. DISH Purchasing has previously failed to comply with this Court's Uniform Civil Practice Standards. (Doc. # 119); *see* (Doc. # 117–18 (ignoring the rule that party filings be typed in Arial font)). Normally, when presented with such noncompliance, this Court would deny the noncompliant motions without prejudice and instruct the disobedient party to file again. However, as explained below, Rule 56 squarely forecloses the need for any further discussion about whether summary judgment is appropriate.

The parties' arguments implicitly recognize the materiality of the following factual questions:

- how many PQ 7/8 mailers Suncraft printed;

- how many of said mailers had significant typographical errors;

- whether DISH Purchasing accepted said PQ 7/8 mailers notwithstanding said errors;

- how many PQ 7/8 mailers Suncraft delivered;

- when they successfully delivered and when;

- how much it cost DISH Purchasing to procure printing and delivery services from the other vendors, RR Donnelley and Jenco, to cover the losses, if any, caused by Suncraft's inability to complete the PQ 7/8 Contract;

- the extent to which Suncraft could have overcome the pandemic-era labor shortage by offering higher wages; and

- whether Suncraft chose to fulfill other obligations instead of the PQ 7/8 Contract.

On a motion for summary judgment, all facts material to the legal inquiry must be undisputed. Although the parties separately insist that the facts material to their respective positions are undisputed, their vehement disagreement and inability to decisively settle these outstanding factual questions fundamentally contradicts their

characterizations of the record. *E.g.*, (Doc. # 105 at 6); *but see* (Doc. # 106-6).[5] Neither party has carried its burden under Rule 56 to establish that there is no dispute of material fact such that the Court can even consider whether the entry of summary judgment is appropriate. This is not the type of case that Rule 56 is meant to resolve without trial. *See generally Anderson*, 477 U.S. at 251–52.

## IV. **CONCLUSION**

Consequently, because the record is replete with genuine issues of material fact, it is ORDERED that both parties' Motions for Summary Judgment (Docs. ## 113–14) are DENIED.

DATED: March 7, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[5] These two competing record citations demonstrate that, although Suncraft asserts that the PQ 7/8 Contract demanded "30.908 million direct mail pieces," the PQ 7/8 Contract itself states a quantity of "3,537,459.6" mailers. Neither party offers a decisive explanation. The parties cannot even manage to settle the number of mailers promised under the PQ 7/8 Contract let alone the considerably more complicated issue of whether Suncraft could have incentivized more laborers to work with higher wages despite the issuance of three economic stimulus checks. This factual inconsistency exemplifies why the current state of the factual record precludes the entry of summary judgment—for either party.